**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

-vs-                                                                          Case No.  6:05-cr-75-Orl-18DAB

**JOHNNY LOUIS TYLER**

---

**ORDER**

The Defendant, Johnny Louis Tyler ("Tyler") was charged with several counts related to drug trafficking and the possession of a firearm, including: Count One - possession of a firearm by a convicted felon in violation of 18 U.S.C. section 922(g)(1);[1] Count Two - possession with intent to distribute five grams or more of a mixture and substance containing a detectable amount of cocaine base in violation of 21 U.S.C. section 841(a)(1); Count Three - possession with intent to distribute five grams or more of a mixture and substance containing a detectable amount of cocaine hydrochloride in violation of 21 U.S.C. section 841(a)(1);[2] and Count Four - using and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. section 924(c)(1)(A).  The issue

---

[1] The Court determined that trying Count One together with the other counts would be unfairly prejudicial to Tyler inasmuch as the evidence required to support Count One would allow the jury to learn that Tyler was a convicted felon.  Thus, the Court bifurcated the trial into two phases.  Phase one consisted of Counts Two, Three and Four, and Phase two was to consist solely of Count One.

[2] Rather than submit multiple counts to the jury of what in actuality is the same charge, the Court subsequently combined Counts Two and Three, and instructed the jury that both cocaine base and cocaine hydrochloride were controlled substances, and that Tyler could be found guilty of possession with intent to distribute a controlled substance if the jury determined that he possessed either or both substances.  The verdict form permitted the jury to indicate which substance or substances they found Tyler to have possessed.

before the Court is whether the evidence at trial was sufficient to support a guilty verdict on Count Four.

**I.     Background**

The facts of the case are fairly simple. Police officers responded to a call at about 5 a.m. on November 18, 2004 and observed a car sitting at an intersection with the engine running but not moving. An officer approached the car and discovered Tyler passed out or unconscious in the driver's seat.[3] The car's transmission was in the "drive" position, and all the doors were locked. While looking in the car, the officer saw the butt of a gun protruding from underneath Tyler's right leg.[4] The officer was unable to rouse Tyler or to attract his attention. Tyler remained in a state of unconsciousness for several minutes, during which time additional police cars, with their lights flashing, arrived, and multiple police officers surrounded Tyler's car, flashed their lights into the car, and tapped and knocked on the windows trying to wake Tyler. Ultimately, one of the officers smashed a window of the car, and Tyler was pulled from the vehicle. While searching the car, the officers discovered five bags containing cocaine base and cocaine hydrochloride in the center console. When questioned at the scene, Tyler acknowledged possession of three bags of cocaine, but disavowed any knowledge of the gun.[5]

---

[3] Tyler had rented the car.

[4] Tyler was, in essence, sitting on the gun.

[5] This case went to trial because, through several attempts to enter a plea to the various charges, Tyler consistently disavowed knowledge of the gun, and the Court determined that a plea could not appropriately be entered in such circumstances.

The case was tried before a jury, which returned verdicts of guilty as to the counts charging Tyler with possession with intent to distribute a controlled substance (Counts Two and Three),[6] and the use or carrying of a firearm during and in relation to a drug trafficking crime (Count Four).[7] At the close of the government's case, Tyler made an *ore tenus* motion pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29") for a judgment of acquittal, and renewed that motion after the jury returned its verdict. The Court denied Tyler's motion as to the drug possession counts, and reserved ruling on Count Four.

## II.   Standard of Review

When considering a motion for judgment of acquittal the Court "must view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *U.S. v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005) (internal citation and quotation omitted); *see also U.S. v. McDowell*, 250 F.3d 1354, 1361-62 (11th Cir. 2001) (Court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

---

[6] In its verdict, the jury indicated it found beyond a reasonable doubt that Tyler possessed both cocaine base and cocaine hydrochloride with the intent to distribute those substances. The jury further indicated that the amount of cocaine base at issue was five grams or more.

[7] The evidence from which the jury could have found Tyler guilty of using or carrying a firearm during and in relation to a drug trafficking offense thus consists of the following: (1) Tyler was found in a car he had rented, and was the sole passenger; (2) the type, amount and packaging of the drugs found in Tyler's car; and (3) Tyler was essentially sitting on the gun. After the jury returned a verdict of guilty as to Counts Two, Three and Four, Tyler stipulated as to the interstate commerce and prior felony conviction elements of Count One. The Court inquired of the parties as to whether there were any remaining issues for the jury to consider. The Government asserted that because the jury returned a guilty verdict on the charge of using or carrying a gun in Count Four, that possession was established for the purposes of Count One as well. Tyler did not object to this assertion, nor did he request that the jury consider this issue further.

reasonable doubt") (internal citations omitted).  The Court must also resolve any conflicts in the evidence in favor of the Government, and accept all reasonable inferences that tend to support the Government's case.  *U.S. v. Taylor*, 972 F.2d 1247, 1250 (11th Cir. 1992); *see also U.S. v. Perez-Tosta*, 36 F.3d 1552, 1556 (11th Cir. 1994) ("In considering the sufficiency of the evidence, [the Court] draw[s] all reasonable inferences in the Government's favor.").  "The jury is free to choose between or among the conclusions to be drawn from the evidence presented at trial, and the district court must accept all reasonable inferences and credibility determinations made by the jury." *Miranda*, 425 F.3d at 959; *see also U.S. v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999).  Indeed, "[t]he prosecution need not rebut all reasonable hypotheses other than guilt."  *Miranda*, 425 F.3d at 959; *see also U.S. v. Iglesias*, 915 F.2d 1524, 1527 (11th Cir. 1990) ("The evidence is sufficient even if it does not exclude every reasonable hypothesis of innocence.").

**III.    Legal Analysis**

Title 21 section 924(c)(1)(A) ("Section 924") provides certain penalties for "any person who, during and in relation to any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm . . . ."  21 U.S.C. § 924(c)(1)(A).[8]  The

---

[8] Section 924 has two prongs. The first prong is the "using or carrying" prong described above. Clearly, however, "use" and "carry" have different meanings. *See* discussion in sections III(A) and (B), *infra*; *see also U.S. v. Garth*, 188 F.3d 99, 110-11 (3rd Cir. 1999) (terms have distinct meanings and one is not coextensive with the other). The second prong provides penalties for "any person who, during and in relation to any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States . . . who, in furtherance of any such crime, possesses a firearm . . . ." 18 U.S.C. § 924(c)(1)(A). The Government did not, however, charge Tyler under this "possession" prong, apparently choosing instead to proceed solely on the charge of "using or carrying" a firearm.

question here is whether there was sufficient evidence to prove that Tyler: (1) used or (2) carried a firearm,[9] (3) during and in relation to a drug trafficking crime.[10]

    A. Use of a Firearm

The Supreme Court has stated that to "sustain a conviction under the 'use' prong of § 924(c)(1), the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime." *Bailey v. U.S.*, 516 U.S. 137, 150 (1995). Thus, a "defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession."[11] *Id*. at 149. The Court further noted that the "active employment" understanding of

---

[9] "The [G]overnment need only show either that [the Defendant] used *or* carried the firearm during and in relation to the drug trafficking crime, not both." *U.S. v. Timmons*, 283 F.3d 1246, 1250 (11th Cir. 2002) (emphasis in original).

[10] The "drug trafficking crime" has been established by the jury's verdict of guilty on the charge of possession with intent to distribute a controlled substance. *U.S. v. Maxwell*, 141 Fed. Appx. 878, 882 (11th Cir. 2005).

[11] The courts thus follow different paths of interpretation for "possession in furtherance," and use or carrying during or in relation to, a drug trafficking offense under Section 924. "[A] conviction under the 'possession in furtherance of' prong of 18 U.S.C. § 924(c)(1)(A) required that the government establish that the firearm helped, furthered, promoted, or advanced the drug trafficking." *U.S. v. Simmons*, 154 Fed. Appx. 786, 788 (11th Cir. 2005) (internal citation and quotation omitted). Further, "the mere presence of firearms within the defendant's control during a drug trafficking offense is insufficient. . . . [T]here must be a showing of some nexus between the firearm and the drug selling operation to sustain a conviction under § 924(c)." *Id*. (internal citation and quotation omitted). Thus, strategic placement of, as well as the proximate location to drugs, of a firearm will suffice for "possession in furtherance of" a drug trafficking offense. *See Simmons*, 154 Fed. Appx. at 789 (factual basis for finding of possession existed where large number of firearms were found in defendant's house, were in close proximity to drugs, and were strategically placed throughout house to protect defendant and the drugs); *U.S. v. Miranda*, 425 F.3d 953, 962 (11th Cir. Sept. 14, 2005) (evidence sufficient to support conviction for possession where, when police entered apartment of which defendant was co-occupant, defendant ran to bedroom and attempted to close door, and police subsequently found firearms lying in plain view on mattress next to substantial quantities of drugs and

"use" includes, but is not limited to, such actions as "brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm."[12] *Id.* at 148. The Court specifically rejected an argument that placement of a firearm for protection or security or to embolden the person constitutes a use, finding that

> Under this reading, mere possession of a firearm by a drug offender, at or near the site of a drug crime or its proceeds or paraphernalia, is a "use" by the offender, because its availability for intimidation, attack or defense would always, presumably, embolden or comfort the offender. *But the inert presence of a firearm, without more, is not enough to trigger § 924(c)(1).*

*Id.* at 149 (emphasis supplied); *see also U.S. v. Maxwell*, 141 Fed. Appx. 878, 882 (11th Cir. 2005) (to establish use, Government need not prove that defendant fired, brandished or displayed gun during offense, but mere presence of firearm is insufficient to constitute "use").

In this case, there is no evidence that Tyler did anything with the firearm in question other than sit on it. This is not enough to establish that Tyler "used" the firearm. *See U.S. v. Rehkop*, 96 F.3d 301, 305-306 (8th Cir. 1996) (police officer observed car at rest through three cycles of traffic light, and then observed defendant asleep at wheel, and upon waking, defendant drove away, swerving while he did so; after defendant was removed from car, officer saw gun on floor behind passenger seat and subsequently discovered large quantity of methamphetamine; it was error for district court to instruct

---

drug-processing equipment). What satisfies for possession in furtherance of an offense, however, is clearly insufficient to establish usage or carrying during and in relation to an offense, in light of the Supreme Court's ruling in *Bailey*. *See U.S. v. Leonard*, 138 F.3d 906, 910 (11th Cir. 1998) ("As interpreted both by us and by our sister circuits, the 'carry' prong of § 924(c)(1) requires more than proof of mere possession; the government must prove that the defendant actually transported the firearm as well.").

[12] "Thus, a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a 'use,' just as the silent but obvious and forceful presence of a gun on a table can be a 'use'." *Bailey*, 516 U.S. at 148.

jury that defendant "used" firearm whenever it was available to aid in commission of drug trafficking offense, and thus conviction was vacated); *U.S. v. Moore*, 76 F.3d 111, 113 (6th Cir. 1996) (defendant did not use firearm where although four loaded guns were in room where defendant was apprehended, defendant was asleep when police found him and there was no evidence that defendant actively employed the guns or offered resistance in any way).

      B. Carrying

To sustain a conviction under Section 924 for carrying a firearm,

> the [G]overnment must show actual transporting of the firearm during and in relation to the drug trafficking offense -- i.e., that the defendant carried the firearm on his person or carried the firearm in a vehicle used for drug distribution during and in relation to the drug trafficking offense.

*U.S. v. Chirinos*, 112 F.3d 1089, 1095 (11th Cir. 1997). The word "carry" "implies personal agency and some degree of possession," *Muscarello v. U.S.*, 524 U.S. 125, 134 (1998), and thus "to be convicted under section 924(c)(1) of 'carrying' a weapon, a defendant must do more than possess or store a weapon." *Moore*, 76 F.3d at 113 (if given appropriate instruction, jury would not necessarily have found defendant guilty of carrying firearm in relation to drug trafficking offense where four loaded guns were in room where defendant was apprehended, defendant was asleep when police found him and there was no evidence that defendant actively employed the guns or offered resistance in any way) (internal citation and quotation omitted). The immediate availability of the firearm is not necessary to support a conviction for carrying. *U.S. v. Wilson*, 183 F.3d 1291, 1295 n.7 (11th Cir. 1999).

      C. "In Relation To"

Under Section 924,

> [t]o prove the "in relation to" requirement, the [G]overnment must demonstrate that the firearm had some purpose or effect with respect to the drug trafficking crime; its

> presence or involvement cannot be the result of accident or coincidence. The gun at least must facilitate, or have the potential of facilitating, the drug trafficking offense.

*U.S. v. Frye*, 402 F.3d 1123, 1128 (11th Cir. 2005) (internal citations and quotations omitted); *see also U.S. v. Williams*, 344 F.3d 365, 371 (3rd Cir. 2003) ("the presence of the gun could not be the result of accident or coincidence"); *U.S. v. Hernandez-Albino*, 177 F.3d 33, 41 (1st Cir. 1999) ("The fact that the gun is carried 'in relation to' the drug crime requires that the defendant have an identified reason for carrying the weapon."). The "during and in relation to" language was added "in part to prevent prosecution where guns 'played' no part in the crime." *Muscarello*, 524 U.S. at 137. Thus,

> the "in relation to" language allays explicitly the concern that a person could be punished under § 924(c)(1) for committing a drug trafficking offense while in possession of a firearm even though the firearm's presence is coincidental or entirely unrelated to the crime.

*Timmons*, 283 F.3d at 1251 (internal citation and quotations omitted). At the same time, however, the phrase "in relation to" is expansive. *Id*. (*quoting Smith v. U.S.*, 508 U.S. 223, 237 (1993)).

Although there is no evidence of a pending transaction in the instant case, such evidence is not necessary because in cases where the predicate offense is possession with intent to distribute a controlled substance, evidence of an impending drug transaction is not necessary to trigger the provisions of section 924(c)(1). *Wilson*, 183 F.3d at 1297 n.10. Indeed, the Eleventh Circuit has concluded that to sustain a conviction for carrying a firearm in violation of Section 924, "it is necessary only to show that the defendant knowingly carried a gun in a car that was being used as a drug-distribution center." *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998) (defendant admitted to carrying loaded weapon in his waistband during drug transaction).[13]

---

[13] *See also U.S. v. Sanchez*, 138 F.3d 1410, 1415 (11th Cir. 1998) (carrying requirement was met where evidence established that defendant transferred firearms to trunk of car and then traveled

D. Tyler

Ultimately, Tyler was found unconscious, in a car, sitting on a gun, and in close proximity to an amount of drugs sufficient to support an inference of intent to distribute. The question is thus whether these circumstances, and the supporting evidence, are sufficient to uphold a conviction on carrying a firearm in relation to a drug trafficking offense.

The Court's analysis starts with the gun. Tyler was found guilty of "carrying a firearm during and in relation to a drug trafficking crime."[14] (Doc. 83 at 5). To reach that finding, the jury must have rejected Tyler's disavowal of knowledge of the gun, and instead determined, most likely based on the fact that Tyler was the sole passenger and was seated on the gun, that Tyler, at some point, was aware of the gun's presence in the car.[15] Thus the jury must have determined that Tyler knowingly carried the gun.[16] The second step is to examine the situation. Tyler was seated on a gun in a car in which

---

in car to meet co-defendants prior to planned home-invasion to steal drugs); *U.S. v. Range*, 94 F.3d 614, 617 (11th Cir. 1996) (affirming conviction for carrying firearm where defendant knowingly carried a gun under the floormat of car when delivering money for cocaine); *U.S. v. Farris*, 77 F.3d 391, 395-96 (11th Cir. 1996) (agents were told that gun belonged to defendant, gun was present in car from which drugs were distributed, defendant set up drug deal and was to make sale; jury could find that car was drug distribution center and that defendant knew gun was in car, even though defendant argued that there was no evidence that he knew gun was in the car and that he was sitting in the back seat).

[14] The only evidence connecting Tyler with the gun was that he was observed sitting on it while passed out in the car, and, as noted above, Tyler consistently denied any knowledge of the gun. Further, the only direct evidence connecting the gun to the drug charge is the fact that both the gun and the drugs were in the car at the same time and in close proximity.

[15] In the Court's Instructions to the Jury, the Court instructed the jury that one of the three elements that had to be proved beyond a reasonable doubt was that "during the commission of [the drug trafficking offense] the Defendant *knowingly* carried a firearm . . . ." (Doc. 76 at 11) (emphasis supplied).

[16] This finding also supports the conclusion that there was sufficient evidence from which the jury could reasonably have inferred that Tyler possessed the gun in violation of 18 U.S.C. section

controlled substances (in an amount sufficient to warrant an inference of intent to distribute) were found in the console next to Tyler. Thus, the gun and the drugs were essentially right next to each other. The third step is to acknowledge that Tyler was found guilty of possession with intent to distribute both cocaine base and cocaine hydrochloride.[17] Tyler's crime was thus not one of actually engaging in prohibited transactions, but simply of possessing controlled substances with a wrongful intent.[18]

Fourth, the Court must address the fact that when the police found Tyler, he was unconscious, thus giving rise to the question as to how he could have been carrying anything (or doing anything

---

922(g)(1). "By its terms, § 922(g)(1) makes it a crime for a convicted felon to 'possess' any firearm that in any way affects interstate commerce." *U.S. v. Gonzalez*, 71 F.3d 819, 834 (11th Cir. 1996). Possession, in the context of section 922(g)(1) requires that the defendant knowingly possess the firearm, and may be proven by showing either that the defendant actually possessed the gun or that he constructively possessed it. *Id.*; *see also U.S. v. Pedro*, 999 F.2d 497, 500 (11th Cir. 1993) ("for a person to have constructive possession over a firearm, the person must have both the intent and the power to exercise dominion and control over the [firearm]. As such, a defendant must, in fact, know of the firearm's existence . . . .") (internal citation and quotation omitted). "Constructive possession is ownership, dominion, or control over the contraband itself, or dominion or control over the premises in which the contraband is concealed." *U.S. v. Ybarra*, 70 F.3d 362, 365 (5th Cir. 1995) (internal citation and quotation omitted). Constructive possession may be proven by circumstantial evidence. *U.S. v. Gill*, 58 F.3d 334, 336 (7th Cir. 1995). The facts show that, at a minimum, Tyler had constructive possession of the gun because the jury could infer both dominion and control over the gun by the fact that he was sitting on it (and could have concluded that it was positioned under his right leg), and dominion and control over the car in which the gun was found because he was the driver and the sole person in the car. As previously noted, the jury also clearly rejected Tyler's statement that he had no knowledge of the gun.

[17] There is no evidence of where or how Tyler obtained the cocaine, what he intended to do with it, where he was going when he passed out, that he had in the past or intended on this occasion to sell drugs out of his car, or any other evidence that his car was a "distribution point" for cocaine. The only evidence supporting the jury's verdict on the possession with intent to distribute charge was the testimony of a D.E.A. agent who indicated that based on the amount and packaging of the cocaine, it was his opinion that Tyler intended to distribute it.

[18] Clearly, were the crime with which Tyler was charged more related to actively supplying or dealing drugs, the analysis would be different here, as there is no evidence that Tyler did any such thing, and thus no evidence to show that Tyler carried a gun "in relation to" such activities.

else) while in a state of unconsciousness. Put another way, the issue is whether the jury could have found that prior to the time at which the police found Tyler he had been driving the car and thus transporting the firearm (and the cocaine), or whether the sole relevant point in time is the time at which the police actually discovered Tyler (when the car was stopped and he was unconscious) in possession of the gun and the cocaine. While acknowledging the fact that Tyler was unconscious and Tyler's car was stopped, the jury must have determined that at a point in the recent past Tyler had been conscious and the car had in fact been moving prior to the officer's arrival, thus finding that Tyler had been knowingly transporting the firearm.[19] This conclusion is supported by the fact that Tyler's car was running, the transmission was in drive and the doors were locked. Thus the jury must have determined that the relevant time period did not start at the instant the officer observed Tyler's car, but at some time prior to that, and that Tyler's conduct occurred on a temporal continuum, rather than at a single point in time.

The final step is to connect the gun with this crime or, in other words, to show that Tyler carried the gun in relation to his possession of (with intent to distribute) the cocaine. Courts have noted that convictions under Section 924 will stand where "the evidence is sufficient to support a finding that the defendant intended to have the firearm available for use during or immediately following the transaction," *Williams*, 344 F.3d at 371, and that the "gun at least must facilitate, or have the potential of facilitating, the drug trafficking offense." *Frye*, 402 F.3d at 1128 (internal citation and quotation omitted). The fact that Tyler had the gun under his right leg, in close proximity to the

---

[19] The fact that Tyler was unconscious when the police found him does not require the conclusion that he was unconscious at all relevant times prior to his discovery. Indeed, Tyler must have been conscious to: (a) get in the car; (b) either sit on the gun or place the gun under his right leg; (c) lock all the doors; and (d) drive to the location at which the police found him.

cocaine, could reasonably be found to indicate that he intended to have the gun available for use, such as to protect his drugs or himself while the drugs were in the car.

While these facts do not provide overwhelming support for the Government's case, they are sufficient for a finding that Tyler carried the gun in relation to the drug trafficking offense for which he was found guilty.[20]

**IV.    Conclusion**

For the reasons stated herein, the Court finds that there was sufficient evidence from which the jury could reasonably find that Tyler carried a firearm in relation to the drug trafficking activity for which he was found guilty.  Accordingly, it is

**ORDERED THAT** the Defendant, Johnny Louis Tyler's Motion for Judgment of Acquittal is DENIED.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on February 13, 2006.

Copies furnished to:

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

United States Marshal

---

[20] *See U.S. v. Maxwell*, 141 Fed. Appx. 878, 883 (11th Cir. 2005) (where defendant conceded that he carried gun, evidence was sufficient to support finding that he did so in relation to crime of possession with intent to distribute controlled substances where defendant was in a car, defendant possessed sufficient quantities of drugs to support inference of intent to distribute, loaded gun under defendant's seat was in close proximity to drugs and thus could reasonably be inferred to be readily accessible, and jury could have concluded that defendant's intention was to use gun, if necessary, to protect self and drugs while transporting them); *U.S. v. Young*, 131 F.3d 1437, 1439 (11th Cir. 1997) (defendant pled guilty to possession with intent to distribute methamphetamine; fact finder could link vehicle and guns to drug trafficking activity even in absence of direct evidence of sale in progress or imminent sale, where guns were loaded in vehicle, defendant knew they were there, they were within driver's reach as were the drugs; reasonable assumptions could be made that vehicle was being used to transport drugs to sale, particularly where defendant admitted that drugs were intended for sale, and fact finder could reasonably conclude that guns had potential of facilitating drug trafficking offense).

United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant